Ronald **EARWOOD**, Appellee,

v.

**CONTINENTAL SOUTHEASTERN LINES, INC. (formerly Carolina Scenic Stages, Inc.), et al., Appellants.**

No. 75–2221.

United States Court of Appeals, Fourth Circuit.

Argued April 1, 1976.

Decided Aug. 25, 1976.

W. T. Cranfill, Jr. and Ernest W. Machen, Jr., Charlotte, N. C. (John F. Ray, Blakeney, Alexander & Machen, Charlotte, N. C., on brief), for appellants.

George S. Daly, Jr., Charlotte, N. C. (Casey, Daly & Bennett, Charlotte, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

Continental Southeastern Lines, Inc., appeals from a judgment of the district court awarding back pay and ordering Continental to cease enforcing its hair length regulation for male bus drivers. We reverse because we are persuaded that sex-differentiated grooming standards do not, without more, constitute discrimination under Title VII of the Civil Rights Act of 1964.

Continental employs men and women in several different job categories. At the time of this suit, however, only men were bus drivers.[1] Other employees are subject to a general grooming regulation requiring them to be neat and clean and groomed in a manner commensurate with their jobs. Drivers are subject to a separate standard, which requires them to "report for work cleanly shaved with a trim haircut, a clean shirt, shoes polished, and a clean, neat uniform."[2] As a result of these standards, both men and women in other job classifications are allowed to have longer hair than the drivers.

Earwood, a bus driver, was taken off several runs in October 1972 until his hair was cut. He was again held off of his run in December because of his hair style. He then filed this suit.[3] The district court described Earwood's hair as " 'modishly full' . . . It was combed over his ears and was thick upon his neck, but not so long as to fall about his shoulders." The district court held that Continental's regulations stemmed from "sex stereotypes" and discriminated against Earwood in violation of Title VII.

To establish a claim of sex discrimination under 42 U.S.C. § 2000e–2, a two-step analysis must be undertaken.[4] The first question is whether sex discrimination within

---

1. Continental says that the lack of women drivers is fortuitous since there are no restrictions barring them. No claim of discrimination against women is involved in this case.

2. With regard to hair length, the company has interpreted this regulation as follows:
   "1. Sideburns will not be worn lower than the ear lobe.
   2. The hair will not at any time hang over the shirt collar.
   3. Hair will not be worn over the ears.
   4. Moustaches will be neatly trimmed, straight, and no handle bars.
   5. Beards are not permitted."

3. Earwood no longer works for Continental, and only back pay is at issue.

4. Title 42 U.S.C. § 2000e–2 provides in part:
   "(a) It shall be an unlawful employment practice for an employer—
   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
   (2) to limit, segregate, or classify his employees or applicants for employment in any

the meaning of the statute has occurred. If so, the employer must then demonstrate a "bona fide occupational qualification" justifying the practice. *See Dodge v. Giant Food, Inc.,* 160 U.S.App.D.C. 9, 488 F.2d 1333, 1335 (1973).

Earwood does not contend that Continental uses its hair length regulation as a pretext for limiting employment of one sex. Since all of its drivers are male, the rule obviously has no such effect. Instead, it is argued, the regulation deprives some men of employment because it enforces a sex stereotype. Such discrimination is based on a combination of sex and a facially neutral factor. Under this theory, regulations limiting employment of women with small children or who are married, but not restricting men similarly situated, have been struck down. *See Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1970); *Sprogis v. United Airlines, Inc.,* 444 F.2d 1194 (7th Cir. 1971).

■ These cases, however, involve factors significantly different from hair length. The objective of Title VII is to equalize employment opportunities. *Griggs v. Duke Power Co.,* 401 U.S. 424, 429–30, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Consequently, discrimination based on either immutable sex characteristics or constitutionally protected activities such as marriage or child rearing violate the Act because they present obstacles to employment of one sex that cannot be overcome. On the other hand, discrimination based on factors of personal preference does not necessarily re-

strict employment opportunities and thus is not forbidden. *See Willingham v. Macon Telegraph Publishing Co.,* 507 F.2d 1084, 1091 (5th Cir. 1975).

■ Employing this analysis, we hold that a sex-differentiated hair length regulation that is not utilized as a pretext to exclude either sex from employment does not constitute an unlawful employment practice as defined by Title VII.[5] Hair length is not an immutable characteristic for it may be changed at will. Unlike the practices forbidden in *Phillips* and *Sprogis,* this regulation does not affect a fundamental right of Earwood's. The right to wear long hair is clearly protected against government interference. *Massie v. Henry,* 455 F.2d 779 (4th Cir. 1972). But as against an employer, even a government employer, a grooming regulation will be sustained unless the decision to enact the regulation or the regulation itself "is so irrational that it may be branded 'arbitrary,' and therefore a deprivation of respondent's 'liberty' interest in freedom to choose his own hair style." *Kelley v. Johnson,* 425 U.S. 238, 248, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1976).

Four courts of appeals have concluded that male hair length regulations alone do not violate Title VII.[6] We follow their sound reasoning.

Accordingly, the judgment of the district court is reversed.

WINTER, Circuit Judge (dissenting):

While I agree with the majority that the district court's judgment cannot be af-

---

way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

.     .     .     .     .

"(e) Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees, . . on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise . . . ."

**5.** Since we hold that Continental's regulation does not discriminate in violation of Title VII, we need not consider whether it involves a bona fide occupational qualification.

**6.** *See Knott v. Missouri Pacific R. R.,* 527 F.2d 1249 (8th Cir. 1975); *Brown v. D. C. Transit System, Inc.,* 523 F.2d 725 (D.C.Cir.1975); *Willingham v. Macon Telegraph Publishing Co.,* 507 F.2d 1084 (1975), *rev'g on rehearing* 482 F.2d 535 (5th Cir. 1973); *Baker v. California Land Title Co.,* 507 F.2d 895 (9th Cir. 1974); *Dodge v. Giant Food, Inc.,* 160 U.S.App.D.C. 9, 488 F.2d 1333 (1973); *Fagan v. National Cash Register Co.,* 157 U.S.App.D.C. 15, 481 F.2d 1115 (1973).

firmed, I think the majority's view of the applicable law is erroneous. Under the law, as I view it, the judgment of the district court should be vacated and the case remanded for further findings. If on remand the district court finds that the hair grooming regulations for male and female bus drivers substantially differ, I would reinstate the judgment. I therefore respectfully dissent.

## I.

Assuming that Continental's male bus drivers must have short hair and that female bus drivers may have long hair, the majority says, in effect, that the Act was not violated so long as the hair length regulation was not adopted as a pretext to exclude either sex from employment. This result is reached on the theory that Title VII proscribes discrimination based only on immutable sex characteristics or constitutionally protected activities. Discrimination based on factors of personal preference, of which hair length is treated as one, in the view of the majority does not necessarily restrict employment and is not proscribed.

While I concede that the view of the majority has a measure of support in the decisions of other circuits, it is not a view to which I subscribe.[1] The majority's view is directly contrary to the plain language of the statute and is unsupported by its legislative history. In pertinent part, 42 U.S.C. § 2000e–2 provides:

(a) It shall be an unlawful employment practice for an employer—
    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin  .  .  . .

Grooming standards are clearly "terms, conditions, or privileges of employment." Thus, an employer may not vary grooming regulations because of an individual's sex. In the absence of any authoritative legislative history indicating a contrary conclusion, I would inquire no further. I reject the notion that the regulation is valid because it is based on a combination of sex and a facially neutral factor, i. e., length of hair. To me, it is manifest that the length of hair is significant only with respect to men and that therefore the regulation discriminates on the basis of sex. The fact that all males do not prefer to wear their hair long is an irrelevancy under the statute.

The vice in the majority's approach is that it imports *constitutional* notions of immutability and fundamentality into the process of *statutory* interpretation. I can find no warrant for concluding that in enacting Title VII, Congress intended to proscribe only sex discrimination which burdens persons who desire to exercise "fundamental rights" or who possess certain "immutable characteristics."[2] In the absence

---

1. My comment is, of course, restricted to the thrust of 42 U.S.C. § 2000e–2(a)(1). I do not foreclose the theoretical possibility that hair length may constitute a "bona fide occupational qualification reasonably necessary to the normal operation of [a bus] business or enterprise," within the meaning of 42 U.S.C. § 2000e–2(e). But I do not consider the latter, since defendant makes no claim that its hair length regulation so qualifies.

2. A regulation which would not impugn "immutable" or "fundamental" rights, but which would probably be invalid under Title VII, can be posited: A regulation which requires male, but not female, employees of the same category to reside within a specified distance of their place of employment would probably be invalid

even though there is no "fundamental" right to dwell at a location distant from one's job, *McCarthy v. Philadelphia Civil Service Comm.*, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976) (per curiam), and residence is not immutable. I think that such a regulation would be invalid because it was so transparently based on sex.

I call attention also to the fact that, in this circuit, the length of one's hair in many circumstances is a constitutionally protected right. *Massie v. Henry,* 455 F.2d 779 (4 Cir. 1972). A government employer can abridge it only for overriding governmental reasons. *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976).

of any suggestion that Congress has transgressed constitutional limitations on its powers, nothing other than putative congressional intent supports the importation of these *constitutional* doctrines into the process of *statutory* construction. If any gloss on the crystalline clarity of the statute is required, it is supplied by *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 90 S.Ct. 496, 27 L.Ed.2d 613 (1971) (per curiam), where the Court held that an employer's policy of hiring men, but not women, with pre-school-aged children, would constitute sex discrimination in violation of the Act, if not justifiable as a bona fide occupational qualification. *Phillips* supports my view. That this is the reading to be afforded *Phillips* follows from the facts that (a) in the present state of medical knowledge, parenthood is a matter of choice and not an immutable status, and (b) there is no fundamental right not to be excluded from a particular job on account of parenthood.

### II.

But I do not think that the case is ripe for final adjudication. Plaintiff was discharged for failure to comply with his employer's hair grooming regulation applicable to bus drivers, and at the time he was discharged all bus drivers were male. As the majority notes, no claim is advanced that driver positions were not open to women. Indeed, women had held driver positions in the past, and one woman was being trained for a driver position at the time of trial.

The record is far from clear, however, whether Continental would treat male and female bus drivers differently with respect to the length of their hair. The district court made no findings in this regard. Briefly stated, the record shows that, according to the testimony of the transportation director and an intra-company memorandum which he wrote, plaintiff might have complied with the regulation by securing his hair up under his hat. The transportation director testified that women drivers would be permitted to satisfy the grooming regulation by wearing their hair in an "upsweep" or "bun," so that it would not fall over their ears or collar. On the other hand, the letter in which plaintiff was informed that his hair length was unacceptable told him that he "needed a *haircut*" and advised him that his hair "must be *cut* in such a manner to be in compliance with Company regulations . . ." (emphasis added). The regulation itself prescribes a "trim" haircut—a word suggesting shortness.

Thus, the record is susceptible to contrary inferences on the question of whether plaintiff could have satisfied Continental's regulations other than by "cutting" his hair. I would therefore remand the case to the district court, to make findings both as to what plaintiff would have been required to do to avoid being discharged and what a female bus driver would have been required to do in like circumstances. If it is found that plaintiff need only to have secured his hair but not to cut it, defendant should be given judgment. If it is found that plaintiff was required to cut his hair but a female bus driver would not have been required to cut her hair, the original judgment should be reinstated.