**Robert E. BAKER, Plaintiff-Appellant,**

v.

**CALIFORNIA LAND TITLE COMPANY, Defendant-Appellee.**

No. 72–2568.

United States Court of Appeals, Ninth Circuit.

Dec. 4, 1974.

Joan T. Andersson (argued), of Andersson, Litt, Livezey, Lund & Taylor, Los Angeles, Cal., for plaintiff-appellant.

John W. Shenk (argued), of Tremaine, Shenk, Stroud & Roberts, Los Angeles, Cal., for defendant-appellee.

Before CARTER and TRASK, Circuit Judges, and NEILL,* District Judge.

## OPINION

TRASK, Circuit Judge:

Baker appeals the dismissal of his complaint for failure to state a claim upon which relief can be granted. Jurisdiction in the district court for this civil rights action brought under Title VII of the Civil Rights Act of 1964 (Amended, Equal Employment Opportunity Act of 1972, Pub.L.No. 92–261, 86 Stat. 103) was based upon 42 U.S.C. § 2000e–5(f)(3). The jurisdiction of this court is authorized by 28 U.S.C. § 1291.

The district court's memorandum opinion is reported at 349 F.Supp. 235 (C.D. Cal.1972).

Appellant was discharged from the employ of appellee because of nonconformity with appellee's hair-length policy. Believing that the Company's tolerance of long hair for female employees and objection to the same length for males constituted sex discrimination within the purview of 42 U.S.C. § 2000e–2(a),[1] appellant initiated proceedings before the Equal Employment Opportunity Commission (EEOC). After exhausting his administrative remedies, appellant filed this suit.

The district court dismissed appellant's claim, and held that the varying hair-length policies did not "discriminate" within the meaning of the statute. 349 F.Supp. at 238–239. In so finding, the court stated that the Act was never intended " . . . to interfere in the promulgation and enforcement of the general rules of employment, deemed essential by an employer, where the direct or indirect economic effect upon the employee was nominal or nonexistent." *Id.* at 238.

■ We are not persuaded that tolerance of a certain hair length for female employees but not for males "discriminates" on the basis of sex within the meaning of Title VII of the Civil Rights Act of 1964. It seems clear from a reading of the Act that Congress was not prompted to add "sex" to Title VII on account of regulations by employers of dress or cosmetic or grooming practices which an employer might think his particular business required. The need which prompted this legislation was one to permit each individual to become employed and to continue in employment according to his or her job capabilities.[2]

---

* Honorable Marshall A. Neill, United States District Judge from the Eastern District of Washington, sitting by designation.

1. Section 703(a) of Title VII, 42 U.S.C. § 2000e–2(a) provides:

   "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or, (2) to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's . . . sex . . . ."

2. While the legislative history of the 1964 Act, Public Law 88–352, is not substantial, that of the Equal Employment Act of 1972,

Public Law 92–261, is more helpful. A statement of the need which prompted the bill, set out in House Report No. 92–238, recites that:

   "Women are subject to economic deprivation as a class. Their self-fulfillment and development is frustrated because of their sex. Numerous studies have shown that women are placed in the less challenging, the less responsible and the less remunerative positions on the basis of their sex alone.

   . . . . .

   "This Committee believes that women's rights are not judicial divertissements. Discrimination against women is no less serious than other forms of prohibited employment practices and is to be accorded the same degree of social concern given to any type of unlawful discrimination.

   . . . . .

   "The time has come to bring an end to job discrimination once and for all, and to insure every citizen the opportunity for the

Or, to express it another way, "The paradigm case of explicit sex discrimination is where sex itself, as a broad generic classification, is the sole basis of the action taken by the employer. Such a case occurs when an employer simply refuses to hire women for a certain position." Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1170 (1971).

Cases in the district court of the United States are split on the question of hair restrictions as a condition of employment. *See* Dilloff, Federal Court Litigation Over the Regulation of Adult Grooming, 38 Albany L.Rev. 387, 390 (1974). Likewise there is division among the district courts of this Circuit. *Compare* Baker v. California Land Title Co., 349 F.Supp. 235 (C.D.Cal.1972), *with* Donohue v. Shoe Corp. of America, Inc., 337 F.Supp. 1357 (C.D.Cal.1972).

█ The issue has also received attention by appellate courts. In Fagan v. National Cash Register Co., 157 U.S.App. D.C. 15, 481 F.2d 1115 (1973), the employer adopted a grooming standard for its male employees with which the appellant was required to conform on pain of losing his job. The district court dismissed his action under 42 U.S.C. § 2000e–2(a) for failure to state a claim entitling him to relief. Much of the rationale of *Fagan* lends itself to a conclusion that the court was convinced that hair-length regulation does not constitute discrimination on account of sex within the meaning of Title VII. Thus the court reasoned that an employer may not adhere to practices which discriminate because of "immutable" characteristics of race, national origin, color or sex. The maxim of *expressio unius est exclusio alterius* lends further credence to the view expressed in *Fagan*. Since race, national origin and color represent immutable characteristics, logic dictates that sex is used in the same sense rather than to indicate personal modes of dress or cosmetic effects. Because there was

other discussion by that court justifying the regulation on the basis of employer needs, it may also be taken as authority for a holding limited to the exception for "bona fide occupational qualification." 42 U.S.C. § 2000e–2(e). That uncertainty became moot, however, when the same circuit decided Dodge v. Giant Food, Inc., 488 F.2d 1333 (D.C.Cir. 1973). There the court, relying upon section 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, faced the issue squarely and decided that hair-length regulation was not discrimination within the meaning of Title VII.

The Supreme Court in Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), spoke in the same vein. The issue there was racial discrimination. Said the Court:

> "The objective of Congress in the enactment of Title VII is plain from the language of the statute. It was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees." *Id.* at 429–430, 91 S.Ct. at 853.

Obviously, it seems to us, the Court was not talking in terms of hair styles or modes of dress over which the job applicant has complete control. The Court was addressing itself to characteristics which the applicant, otherwise qualified, had no power to alter.

The employment which was under consideration here was a job in the Title Company as a Title Clerk. Neither the Findings of Fact by the district court nor the record otherwise indicate just what the job requirements might be. Certainly there is no suggestion that it might have been better performed by a man than by a woman or vice versa.

The character of appellant's sex does not seem to have been a deterrent to his qualifications or he would not have obtained the job in the first place. It was his violation of the company groom-

decent self-respect that accompanies a job commensurate with one's abilities. . . ."

U.S.Code Cong. & Admin.News, pp. 2140–2141 (1972).

ing standards after his employment which appears to have caused his termination, not his sex.

We agree with the district court that a private employer may require male employees to adhere to different modes of dress and grooming than those required of female employees and such does not constitute an unfair employment practice within the meaning of 42 U.S.C. § 2000e–2(a).

Having so found, it becomes unnecessary for us to consider whether the employer's dress requirement might be justified as a bona fide occupational qualification pursuant to 42 U.S.C. § 2000e–2(e)(1).

Judgment affirmed.